WILLIAM BLUMENTHAL
General Counsel

LAURA FREMONT
JEROME M. STEINER, JR.
JANICE L. CHARTER
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
Phone (415) 848-5100/Fax (415) 848-5184

KENNETH H. ABBE
Federal Trade Commission
10877 Wilshire Blvd., Suite 700
Los Angeles, CA 90024
Phone (310) 824-4343/Fax (310) 824-4380

BLAINE T. WELSH
Assistant United States Attorney
Bar No. 4790
333 Las Vegas Blvd, South, Suite 5000
Las Vegas, NV 89101
Phone (702) 388-6336/Fax (702) 388-6787

Attorneys for Plaintiff
Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br>  v.<br><br>NATIONAL PRIZE INFORMATION GROUP CORP. dba Las Vegas Actionable Awards Program, Prize Search Express, Department of Unclaimed Awards, United States Sweepstakes Advisory, United States of America Patriotism Awards, National Bureau of Prize Information, Lapham Vargas and Cornell, and Directors Office; and<br><br>JOHN RINCON, individually and as an officer of NATIONAL PRIZE INFORMATION GROUP CORP.,<br><br>    Defendants. | 2:06-cv-01305-RCJ-PAL<br><br>[Proposed]<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ENTRY OF ORDER FOR PRELIMINARY INJUNCTION WITH ASSET FREEZE** |

Findings of Fact and Conclusions of Law for PI

On October 18, 2006, based on the pleadings, declarations, exhibits, and memoranda filed in support of the Plaintiff Federal Trade Commission's application, the Court entered a Temporary Restraining Order with Asset Freeze and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("TRO") against defendants John Rincon ("Rincon") and National Prize Information Group Corp. ("NPIGC") dba Las Vegas Actionable Awards Program, Prize Search Express, Department of Unclaimed Awards, United States Sweepstakes Advisory (or Advisors), United States of America Patriotism Awards, National Bureau of Prize Information, Lapham Vargas and Cornell, and Directors Office.

On October 23, 2006, defendants requested emergency relief from the TRO to allow the release of frozen funds for payment of attorneys' fees, business expenses for NPIGC, and living expenses for Rincon. After a hearing on October 24, 2006, this Court authorized the following release of frozen funds: $5,000 for each of the two law firms representing defendants, $5,000 per month for up to three months for business expenses for NPIGC, and $5,000 per month for up to three months for living expenses for Rincon. Otherwise, the TRO remained in place until hearing on plaintiff's motion for Preliminary Injunction.

On October 26, 2006, defendants Rincon and NPIGC filed their Memorandum in Opposition to Preliminary Injunction, in which they contested the need for an injunction and asset freeze. The Federal Trade Commission ("FTC") filed its reply to the Opposition on October 30, 2006. On November 1, 2006, the Court conducted a hearing on the FTC's motion for preliminary injunction. At that time, the Court raised the amount of allowable attorneys fees to $25,000 for each of the two law firms representing defendants, for one time only.

Having considered the pleadings, declarations, exhibits, and arguments of counsel, the Court makes the following findings of fact for purposes of entry of the preliminary injunction.

|   | FINDINGS OF FACT |
|---|---|

Defendants

1. Defendants are National Prize Information Group Corp. ("NPIGC") and John Rincon. NPIGC has done business under fictitious names including Las Vegas Actionable Awards Program or LVAAP, Prize Search Express or PSE, Department of Unclaimed Awards, United States Sweepstakes Advisory (or Advisors) or USSA, United States of America Patriotism Awards or USAPA, National Bureau of Prize Information or NBPI, Lapham Vargas and Cornell, Directors Office, Cash Distribution Reporting Agency or CDRA, and Homeland Entitlement Recruitment Order or H.E.R.O.

2. NPIGC is a Nevada corporation formed in August 2003. It has operated from the following addresses: 9550 W. Sahara Avenue, Las Vegas, Nevada 89117; and 9904 Garamound Avenue, Las Vegas, Nevada 89117.

3. In dealing with consumers, NPIGC used the following post office box addresses: PO Box 98835, Las Vegas, Nevada 89193; and PO Box 98855, Las Vegas, Nevada 89193.

4. Defendant Rincon resides in Las Vegas, Nevada, and is the sole officer, director, and owner of NPIGC.

Defendants' Course of Conduct

5. Beginning sometime in 2004 and continuing until at least October 12, 2006, NPIGC sent literature ("mailers") by United States mail to consumers throughout the United States . One of these mailers, quoted for illustrative purposes, included the following language:

"**Authorization To Disburse \*\*\*\* over $3,646,000.00\*\*\*\* Official LVAAP Prize Documentation**...

**DISBURSEMENT STATUS:**

**VERIFIED documentation confirming entry data for cash and prizes totaling over \*\*\*Three Million Six Hundred Forty Six Thousand Dollars\*\*\* <u>GUARANTEED</u> to be paid. Respond at once.**

Findings of Fact and Conclusions of Law for PI　　　　　　　　　　　　　　　　　　Page 2

| | | |
|---|---|---|
| **Complete** | | Unawarded sweepstakes cash and prizes worth more than $3,600,000.00 have been fully identified, verified and documented. |
| **Verified** | | This entire amount will be disbursed in accordance with sponsors' official rules. Strict deadlines apply. |
| **Complete** | | Documentation detailing complete entry and claim procedures has completed and compiled. |
| **Complete** | | Thorough database search resulted in positive selection of the following as confirmed recipient of the full over $3,600,000.00 documentation on Wednesday at 08:47:23 GMT: [followed by consumer's name] |
| **Required Action:** | | |
| **Pending** | | Return the Acceptance of disbursement (Form A-2) below at once with the $20 document fee in enclosed Prepaid PRIORITY envelope for fastest processing |
| | | **WARNING: Failure to respond in time may result in a total elimination or significant reduction in total prize availability** |

And another mailer, also quoted for illustrative purposes, included this language:

**YOU ARE ABSOLUTELY SWORN TO SECRECY**

**ABSOLUTELY CONFIDENTIAL**

[followed by the consumer's name]

**PRIZED RECORD NON-GOVERNMENTAL AGENCIES REPORTS:**

[followed by four names, with the solicited consumer's name at the top of the four, showing his or her "confirmed prize" as "uncollected" and the other three as "collected"]

**CONGRATULATIONS NO. 1** [consumer's name] **Restrictive – Tell Nobody**

**Congratulations from all of us – been trying to reach you** [appears to be handwritten]

**THIS IS A DAY YOU MAY REMEMBER FOR THE REST OF YOUR LIFE**

**Restricted Communication from the Las Vegas, Nevada Actionable Award Program on** [date filled in]

Findings of Fact and Conclusions of Law for PI                                          Page 3

**Name of Contractor: Las Vegas, Nevada Actionable Award Program**

**Reported Confirmed Prize Re Drawn Prized Name:** [followed by consumer's name]

**Approximate amount of Status Report Entitlement: $3,341,006.00** [then spelled out]

**Entry Contract Status Absolutely Confirmed For Contractee On Record**

**hereinafter referred to as** [consumer's name]

**DATE OF DEDICATED CONFIRMED STATUS** [followed by a date]

**After Recording, Rush Via Prioritized mail to** [followed by consumer's name, city, state, and zip code]

**Privileged Privacy Rights Contract Document Attached: To be returned by** [consumer's name] **(of utmost priority)**

6. Both of the mailers quoted above and other mailers included variously-worded paragraphs at the bottom, in very small type. The language of one of these mailers, quoted for illustrative purposes, was:

"LVAAP is a service offered to our customers that provides information on available sweepstakes that are open to the public for entry. Subscribers are solely responsible for investigating, viewing, and complying with any and all rules, restrictions, requirements, or provisions set forth in any sweepstakes. The contents of our newsletters are accurate to the best of our knowledge and LVAAP shall not be liable for errors, omissions, or inaccuracies. Liability for mistake or typographical error is limited to a full refund of the purchase price of the publication. LVAAP has no association or affiliation with any particular sponsor of any sweepstakes or contest. No such association or affiliation should be inferred or implied."

7. The net impression of defendants' mailers is that consumers have won a prize of over $3 million, which can be obtained by sending a $20 fee to defendants. The small-print disclosure, containing legalistic and ambiguous language, does not dispel that net impression.

8. Although defendants changed the mailers they were sending out between May 8, 2006, and June 9, 2006, the Court makes no findings with regard to those mailers

Findings of Fact and Conclusions of Law for PI                                                      Page 4

because defendants quickly resumed sending mailers very similar to the ones they were sending before May 8, 2006, and continued sending mailers similar to the pre-May 8 mailers until at least October 12, 2006.

9. Consumers throughout the United States, after reading defendants' mailers, believed they had won a prize of over $3 million, which could be obtained by sending a $20 fee to defendants.

10. Defendants were on notice through complaints received from the Better Business Bureau and Attorneys General that defendants' mailers caused consumers to believe they had won a prize of over $3 million.

11. Consumers receiving defendants' mailers had not, in fact, won a prize of over $3 million. Rather than giving away a prize, defendants provided only a newsletter informing consumers about sweepstakes they may be eligible to enter. Thus, defendants' representations that consumers had won a prize of over $3 million was false.

Consumer Injury

12. At least 294,000 individual consumers each sent $20 or more to defendants in response to defendants' mailers. Between 2004 and 2005, defendants took in nearly $9.6 million from such consumers.

Rincon's Knowledge of and Participation in the Deceptive Conduct

13. Rincon applied for the post office boxes NPIGC used to receive mail from consumers and signed many of the mailers sent to consumers. He is the sole officer and owner of NPIGC.

14. Rincon responded to complaints from consumers about their failure to win a prize of over $3 million, which were forwarded to NPIGC by the Better Business Bureau. Thus, Rincon was aware that NPIGC's mailers caused consumers to believe they had won a prize of over $3 million.

15. Rincon failed to provide the Court with the most recent mailers sent to consumers by NPIGC, instead providing mailers that were used for only a brief period of time.

# CONCLUSIONS OF LAW

<u>Jurisdiction and Venue</u>

1. This Court has jurisdiction over the subject matter of this case and of all parties hereto. Subject matter jurisdiction is based upon 28 U.S.C. §§ 1331, 1337(a), and 1345, and upon 15 U.S.C. § 53(b).

2. Venue in the District of Nevada is proper under 28 U.S.C. § 1391(b) and (c), and under 15 U.S.C. § 53(b). Defendants transacted business in this district, and the violations alleged in the complaint arose in this district.

3. Defendants' actions were "in or affecting commerce" within the meaning of Section 4 of the Federal Trade Commission Act, 15 U.S.C. § 44, since NPIGC sent mailers to consumers in numerous States, and received funds from consumers in numerous States.

<u>The Applicable Provisions of the Federal Trade Commission Act</u>

4. The Federal Trade Commission ("Commission") is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The Commission is charged, *inter alia*, with enforcement of Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45.

5. Section 5(a)(1) of the FTC Act declares unfair or deceptive acts or practices in or affecting commerce to be unlawful.

6. Section 16(a)(2) of the FTC Act, 15 U.S.C. § 56(a)(2), authorizes the Commission to commence and supervise litigation under Section 13 of the FTC Act.

*Violations of Section 5 of the FTC Act*

7. To prove that defendants engaged in deception in violation of Section 5, the Commission must show that defendants' representations were material and likely to mislead consumers acting reasonably under the circumstances. *Kraft, Inc. v. FTC*, 970 F.2d 311, 314 (7th Cir. 1992); *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988); *Cliffdale Associates*, 103 F.T.C. 110, 164-65 (1984).

8. A misleading impression created by a solicitation is material if it 'involves

information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product. *Cyberspace.com,* 453 F.3d 1196, 1201 (9th Cir. 2006) (citing *Cliffdale Assocs., Inc.*, 103 F.T.C. at 165); *see also FTC v. Minuteman Press*, 53 F. Supp. 2nd 248, 258 (E.D.N.Y. 1998) (citing same).

9. Claims that go to the core reason why consumers purchase a product are material. *Kraft, Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992) (statement material if likely to affect consumers' decision to buy the product or service). Defendants' mailers created the impression that the consumers to whom they were addressed had won a prize. Consumers sent a fee to defendants because they thought that they had won a prize, and that the $20 payment to defendants was necessary to collect that prize.

10. The evidence submitted by the Commission, as outlined in the Court's findings 5, 9, 10, and 12, demonstrates that the alleged deceptive mailers were widely disseminated and that purchases were made from defendants.

11. The totality of the statements made by defendants as outlined and illustrated in the Court's findings 5-6 demonstrate that defendants misrepresented that consumers had won a substantial cash prize often represented as being over $3 million. These misrepresentations were material and were likely to mislead consumers acting reasonably in the circumstances. Therefore, these misrepresentations constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act.

12. In an FTC Section 13(b) injunction action, the Court has the inherent equitable power to grant all temporary and preliminary relief necessary to effectuate final relief, including a TRO, an asset freeze (including a freeze on individual assets), expedited discovery, a preliminary injunction, and other necessary remedies. *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994); *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982).

<u>Individual Liability of Defendant Rincon</u>

13. The standard that the FTC must meet to prove individual liability is well-established. First, the FTC must show that corporate liability exists in that consumer

Findings of Fact and Conclusions of Law for PI            Page 7

injury resulted from consumers' reasonable reliance on the business practices involving misrepresentations or omissions. *Publishing Clearing House*, 104 F.3d 1168, 1170 (9th Cir. 1997) The Commission's evidence in the present matter, as discussed above, amply demonstrates such liability.

14. After establishing corporate liability, the FTC must show that the individual (1) actively participated in the violative practices or (2) had authority to control the deceptive practices and had or should have had knowledge or awareness of the practices. *Publishing Clearing House*, 104 F.3d at 1170-71; *see also FTC v. Gem Merchandising Corp.,* 87 F.3d 466, 470 (11th Cir. 1996); *FTC v. Amy Travel, Inc.,* 875 F.2d 564, 573-74 (7th Cir. 1989). Authority to control can be evidenced by "active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *Amy Travel*, 875 F.2d at 573. Constructive knowledge can be shown by demonstrating that a defendant was recklessly indifferent to the truth, or had an awareness of a high probability of fraud coupled with an intentional avoidance of the truth. *Publishing Clearing House*, 104 F.3d at 1171. In addition, the "degree of participation in business affairs is probative of knowledge." *Amy Travel*, 875 F.2d at 574.

15. By sending out deceptive and misleading mailers, NPIGC induced consumers to believe that they had won a prize of over $3 million. It injured consumers in doing so. The evidence submitted by the Commission, as outlined in the Court's findings 13-15, demonstrate that defendant Rincon controlled NPIGC, and that he knew about, or was recklessly indifferent to, NPIGC's deceptive practices. He also had authority to control NPIGC. Therefore, he is personally liable.

*Standards for Preliminary Relief under Section 13(b)*

16. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), authorizes the Commission to seek injunctive relief against violations of "any provision of law enforced by the [Commission]." *FTC v. Mylan Laboratories,* Inc., 62 F.Supp. 2d 25, 36-7 (D.D.C. 1999); *FTC v. Evans Products*, 775 F.2d 1084, 1086 (9th Cir. 1985); *FTC v. Brown &*

Findings of Fact and Conclusions of Law for PI                                                                                   Page 8

1 *Williamson Tobacco Corp.*, 580 F. Supp. 981 (D.D.C. 1983), *aff'd in part and remanded
2 in part*, 778 F.2d 35, 43 (D.C. Cir. 1985); *FTC v. Virginia Homes Manufacturing Corp.*,
3 509 F. Supp. 51, 53-54 (D. Md.), *aff'd*, 661 F.2d 920 (4th Cir. 1981); *FTC v. Minuteman
4 Press*, 53 F. Supp. 2d at 260.

5 17.   To grant the Commission a preliminary injunction to enforce the FTC Act, the
6 Court must "'1) determine the likelihood that the Commission will ultimately succeed on
7 the merits and 2) balance the equities.'" *Affordable Media*, 179 F.3d 1228, 1233 (9th
8 Cir. 1999) (quoting *FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1160 (9th Cir.
9 1984)); *see also World Wide Factors*, 882 F.2d 344, 346 (9th Cir. 1989) (holding same).

10 18.   The Court need not consider the same factors as it would in a motion for
11 injunctive relief among private litigants. *United States v. Odessa Union Warehouse Co-
12 op*, 833 F.2d 172, 174-75 (9th Cir. 1987); *see also Affordable Media*, 179 F.3d at 1233
13 (holding the Commission has "a lighter burden . . . than that imposed on private
14 litigants").

15 19.   Unlike private litigants, "the Commission need not show irreparable harm."
16 *Affordable Media*, 179 F.3d at 1233; "[h]arm to the public interest is presumed." *World
17 Wide Factors*, 882 F.2d at 346.  Moreover, in balancing the equities, the public interest
18 should receive greater weight than private interests. *Id.* at 347.

19 20.   As irreparable harm is presumed in a statutory enforcement action, the district
20 court need only find some chance of probable success on the merits. *FTC v. World Wide
21 Factors*, 882 F.2d at 347.  The Court finds that the Commission has more than met this
22 burden.

23 21.   When balancing the hardships of the public interest against a private interest under
24 Section 13(b), the public interest, which includes economic effects for consumers and
25 effective relief for the Commission, should receive greater weight. *FTC v. Affordable
26 Media*, 179 F.3d at 1236; *FTC v. World Wide Factors*, 882 F.2d at 347.

27 22.   Injunctive relief would serve the public interest in this case in two important
28 respects.  First, Defendants' practices were not isolated occurrences.  Rather, they

1  demonstrate an ongoing pattern of law violations central to the success of defendants'
2  business enterprise. The second interest that weighs in favor of injunctive relief is the
3  injury to consumers inflicted by defendants' pattern of law violations. More than
4  294,000 consumers may already have been defrauded out of over $ 9 million.
5  23.  A district court has authority to grant a preliminary injunction under Section 13(b)
6  of the FTC Act against violation of any provision of law enforced by the Commission
7  when there is a cognizable danger of recurrent violation. *United States v. W.T. Grant*
8  *Co.*, 345 U.S. 629, 633, 97 L.Ed. 1301, 73 S.Ct. 894 (1953); *F.T.C. v. Evans Products*
9  *Co.*, 775 F.2d at 1097.
10 24.  The Court finds that there is a strong likelihood of recurring violations based upon
11 the pervasive nature of the fraudulent activity. An extensive history of violations begets
12 an inference that future violations are likely to occur. *SEC v. Koracorp Indus., Inc.*, 575
13 F.2d 692, 698 (9th Cir. 1978). Because defendants' prior history denotes an ongoing
14 pattern of fraudulent activity, even after learning of a federal government investigation,
15 continued violations of the FTC Act are likely, absent a preliminary injunction.
16 25.  The Court's authority to grant preliminary injunctive relief under Section 13(b) of
17 the FTC Act includes all ancillary relief necessary to afford complete justice, including
18 an asset freeze. *F.T.C. v. H.N. Singer*, 668 F.2d at 1112-1113.
19 26.  A court may impose an asset freeze based on the mere *possibility* of dissipation of
20 assets. *FSLIC v. Sahni*, 868 F.2d 1096, 1097 (9th Cir. 1989); *FTC v. National Invention*
21 *Servs., Inc.,* 1997-2 Trade Cas. (CCH) ¶ 71,921, at 80,478 (D. N.J. 1997). That
22 possibility is present where, as here, defendants have engaged in pervasive fraudulent
23 activity. *See FTC v. H.N. Singer*, 668 F.2d at 1113; *SEC v. Manor Nursing Ctrs., Inc.*,
24 458 F.2d 1082, 1106 (2d Cir. 1972). Without an asset freeze, it is unlikely that funds will
25 be available to satisfy any final order granting restitution to defrauded consumers.
26 27.  Public injury resulting from defendants' conduct is substantial, as consumer injury
27 is over $9 million. It is in the public interest to freeze NPIGC's assets as restitution is
28 likely in this action.

Findings of Fact and Conclusions of Law for PI                                                   Page 10

28. Additionally, because the Court has found that defendant Rincon either knew or should have known of the deceptive nature of NPIGC's business practices, the Court finds it to be in the interest of the public to freeze his personal assets.

29. Weighing the equities and considering Plaintiff Commission's likelihood of success in its cause of action, the Preliminary Injunction entered by this Court on November 1, 2006, is in the public interest.

30. No security is required of any agency of the United States for issuance of a preliminary injunction. Fed.R.Civ.P. 65(c).

**IT IS SO ORDERED.**

UNITED STATES DISTRICT JUDGE

Date: November 2, 2006.